RUMPP & SONS *et al. v.* UNITED STATES (No. 1627).[1]

1. ARTICLES DESIGNED TO BE CARRIED ON OR ABOUT OR ATTACHED TO THE PERSON.
    Small brass-bound memorandum books with brass-capped lead pencil so fitted to the binding as to keep the book closed when not in use and small metal pencil cases and holders, having an individuality of their own in that they are suitable to be carried as separate entities as well as in hand bags, belong to the class of articles which are designed to be carried on or about or attached to the person, and are dutiable as such under paragraph 356, tariff act of 1913.

2. ARTICLES OR WARES OF METAL.
    Metal handles for small articles of personal convenience (such as buttonhooks), pin and needle boxes, buttonhooks, tweezers, manicuring implements, pin or hairpin boxes, and perfume or smelling-salt flasks are shown by the testimony and by their shape, size, and construction not to be articles designed to be carried on or about or attached to the person. They are not dutiable as such under paragraph 356, tariff act of 1913, but as articles or wares of metal under paragraph 167.

3. SMALL CONTAINERS OF VANITY ARTICLES AND PREPARATIONS.
    Metal powder boxes, powder puff boxes, eyebrow pencil cases, and lip-stick boxes are suitable containers for vanity articles and preparations and were, so far as the record shows, properly classified by the collector under paragraph 356, tariff act of 1913.

---

[1] Reported in T. D. 36507 (30 Treas. Dec., 1096).

4. MIRRORS FOR VANITY CASES.

Small mirrors suitable for use in fitting out vanity cases are not dutiable as parts of vanity cases under paragraph 356, tariff act of 1913, but as mirrors under paragraph 95.

United States Court of Customs Appeals, June 6, 1916.

APPEAL from Board of United States General Appraisers, Abstracts 38550, 38760, and 38765.

[Modified.]

*Comstock & Washburn (Albert H. Washburn* and *J. Stuart Tompkins* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

[Oral argument February 8, 1916, by Mr. Washburn and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Fittings for leather bags, dressing cases, manicure cases, and other leather cases and boxes imported by C. F. Rumpp & Sons, Langfeld Bros., Dingelstedt & Co., and John Wanamaker, were classified by the collectors of customs as articles composed of metal valued above 20 cents per dozen pieces and designed to be worn on the apparel or carried on or about or attached to the person, and were accordingly assessed for duty at 60 per cent ad valorem under that part of paragraph 356 of the tariff act of 1913 which reads as follows:

356. * *. * Articles valued at above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof; finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semi-precious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, 60 per centum ad valorem. * * *

All of the importers protested that the goods imported were dutiable under the provisions of paragraph 167 of the tariff act of 1913 either at 20 per cent ad valorem as articles of metal or at 50 per cent ad valorem as articles of metal plated with gold or silver. Paragraph 167 reads as follows:

167. Articles or wares not specially provided for in this section; if composed wholly or in part of platinum, gold, or silver, and articles or wares plated with gold or silver, and whether partly or wholly manufactured, 50 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

In addition to these grounds of objection to the classification of the collector, Dingelstedt & Co. claimed that the goods were dutiable under various other paragraphs of the tariff act, and apparently based

such claims either on the ground that the merchandise was more specifically provided for therein or on the ground that the several articles were classifiable thereunder by reason of the component material of chief value.

The Board of General Appraisers overruled the protests of the several importers in separate decisions, and from those decisions the importers took an appeal to this court.

As appears from the record and samples in evidence the goods involved in the case of C. F. Rumpp & Sons are metal handles, apparently designed to be fitted to a buttonhook or other small implement; tubular-shaped metal boxes, about 2 inches long and ½ inch in diameter, suitable for holding lip sticks; flat metal boxes, 1¾ inches in diameter by about one-half inch in depth and fitted for use as powder boxes; spatula-shaped metal instruments without handles and apparently designed to be used in pressing back the cuticle from the finger nails; steel tweezers and buttonhooks, fitted with brass handles; brass boxes, 2¾ inches long by 1½ inches wide, with ellipsoidal sides and available as containers for pins or hairpins; small brass flasks for holding perfume, smelling salts, or other liquid preparations; small brass-bound memorandum books with brass-capped lead pencil, so fitted to the metal binding as to keep the book closed when not in use.

Phillip E. Roth, a witness for the importers, testified that the several articles were imported for use as fittings for leather dressing cases, manicure cases, work baskets, ladies' hand bags, and cases of like character made of leather. He stated that two or three of the pieces could be used as fittings for vanity cases, but the particular pieces which might be so used were not identified. In our opinion, however, the only articles available for the making up of vanity cases are the small flat boxes which might be used for containing face powder and powder puffs and the small tubular boxes which might be used for holding lip sticks. Whether these particular boxes are chiefly used for leather vanity cases or for metal vanity cases does not appear from the evidence. The collector, however, classified them under paragraph 356, and for the purposes of this case at least we must assume that they are chiefly used in making metal vanity cases.

The goods involved in the protest of Langfeld Bros. are metal lead pencil and eyebrow pencil holders, metal pin and needle cases, and also metal lip stick tubes, memorandum books, pin or hairpin boxes, and small flasks of the same general character as those covered by the protest of C. F. Rumpp & Sons. According to the uncontradicted testimony submitted by the importers, the articles just enumerated are used as fittings for ladies' hand bags made of leather. Illustrative of the method of using these articles, a leather hand bag was put in evidence. This bag was provided with small cloth pockets, which

contained a pin or hairpin case of brass, a brass lead-pencil holder, and a small mirror in a brass frame. In the body of the bag there was also a coin purse composed of leather and brass.

The protest of Dinglestedt & Co. contested the classification of brass or nickel-plated perfume and smelling salt flasks; small round nickel-plated metal powder boxes; small round nickel-plated metal boxes beveled at the edges, each containing a powder puff; oblong nickel-plated metal pin or hairpin boxes; and a small mirror in a nickel-plated metal frame. The testimony offered by the importers was to the effect that all of these conveniences were used as fittings for ladies' hand bags, and that none of them was a vanity case. A leather bag was offered and received in evidence illustrative of the manner of fitting such bags with articles of the kind described. This bag was provided with cloth pockets, in which were placed a small mirror in a metal frame, a metal perfume flask, a metal powder box, a metal puff box, and a metal pin or hairpin case. The body of the bag contained a small leather purse having a nickel-plated frame.

The protest of John Wanamaker objected to the classification of small, round, shallow brass powder boxes, flat brass perfume or smelling salts flasks, and oblong pin or hairpin cases. The top of the powder boxes and one side of the flasks and hairpin cases are apparently enameled. It appears from the record that these powder boxes, perfume flasks, and pin or hairpin cases are used as fittings for leather traveling bags, traveling cases, ladies' hand bags, motoring and party cases, and other kinds of fitted leather cases.

With the exception of the metal handles, buttonhooks, tweezers, lead-pencil cases, and metal-bound memorandum books of which the pencils or metal pencil cases form a part, and possibly the manicuring implements, all of the articles covered by the various protests are in their very nature designed chiefly, if not wholly, for the use of women. Metal pencil cases and memorandum books, with metal pencil holders and pencils attached thereto, are used by both men and women and are carried as independent articles on or about the person by men. The pencil cases and the memorandum books with metal pencil holders attached here in controversy are susceptible of use by men, and, just as they are, can be carried by men in the pocket in the same way as are ordinary lead pencils and memorandum books. There is no evidence showing or tending to show that the pencil cases, memorandum books, or metal pencil holders under discussion are chiefly used as fittings for leather bags, and as against the presumption of correctness attaching to the collector's decision we can not assume that they are not chiefly used by men. As the record stands, we must therefore hold that the metal pencil cases, metal-bound memorandum books, and metal pencil holders are articles which in the form they had on importation are designed to be carried by men on or about or attached to the person, and that therefore they were

properly classified by the collector under paragraph 356 and dutiable as assessed by him.

The metal handles, buttonhooks, tweezers, and possibly the manicuring implements are used by both men and women. It can not be said, however, that they are customarily or usually carried by men or that their form or nature marks them as articles designed to be carried by men on or about the person. The lip-stick boxes, powder boxes, pin and needle boxes, pin or hairpin boxes, perfume or smelling-salts flasks, and small mirrors are used chiefly, if not exclusively, by women, and certainly none of them can be regarded as part of the equipment usually carried by men for their personal pleasure, comfort, or convenience. As to all of the articles, with the exception of the metal pencil cases, metal memorandum books, and metal pencil holders, the question on appeal finally reduces itself, therefore, to this: Are any of the articles designed to be carried by women on or about, or attached to the person? None of them is provided with a ring or chain or other means for carrying it on or about or attached to the person. Clearly it would not be practicable or convenient for women to carry them in the hand. More than that, their shape, size, and make-up must be regarded as convincing evidence that they were not intended to be carried by women as independent entities, and that they were designed to be used as fittings for hand bags or other receptacles.

It is true that ladies' leather hand bags fitted with articles of the kind now under discussion and ladies' vanity cases fitted with some of them are carried on or about or attached to the person. Such articles, however, when permanently fitted to ladies' hand bags or vanity cases, lose their identity as distinct entities and become as much parts in the tariff sense of the fitted hand bags or vanity cases as are the straps or chains by which the hand bags or vanity cases are carried. When carried or used in traveling as fittings of leather bags or vanity cases the conveniences are, therefore, carried on or about or attached to the person as constituents of the entirety of which they are a part and not as things having an individuality of their own. Sussfeld, Lorsch & Co. *v.* United States (5 Ct. Cust. Appls., 382, 384; T. D. 34875).

Considered as distinct entities and not as fittings for bags or cases it is evident that the metal handles, buttonhooks, small mirrors, tweezers, manicure implements, pin and needle boxes, powder boxes, perfume flasks, powder-puff boxes, lip-stick boxes, and pin or hairpin boxes are, by reason of their very nature, not designed to be carried by men on or about or attached to the person, and it is equally evident from their construction that they are not intended to be so carried by women. If they be regarded as fittings for ladies' hand bags or vanity cases, the question immediately arises, What provision of the tariff act is applicable to them as such parts or fittings? Leather

bags and leather cases fitted and furnished with traveling, bottle, drinking, dining, luncheon, and similar sets are specifically enumerated in paragraph 360, but fittings, furnishings, or parts of such bags or cases are not specifically provided for in that or any other provision of which we are aware. The goods we are discussing now, however, are not only fittings for leather bags or cases, but they are also articles or wares composed wholly or in part of metal, and therefore they are within the provisions of paragraph 167.

The powder boxes, eyebrow-pencil cases, and the lip-stick cases are receptacles for preparations designed to be used on the face, lips, eyebrows, and perhaps eyelashes. The powder-puff boxes are intended to hold tiny powder puffs, and the small mirrors may be used to facilitate the application of the powder and other preparations. Saying nothing of the testimony in two of the cases, we think we may fairly conclude from the form and size of the powder boxes, eyebrow-pencil cases, powder-puff boxes, and lip-stick cases that they are suitable containers for vanity articles and preparations and that they are parts of vanity cases as distinguished from the things contained and designed for use. Whether they are chiefly used as fittings for leather bags rather than as parts of metal vanity cases does not, as we have already said, appear from the evidence, but inasmuch as the collector held them to be dutiable under paragraph 356, we must presume that they are chiefly used as parts of vanity cases composed of metal. They are, therefore, at one and the same time fittings for leather bags, articles of metal, and parts of vanity cases composed of metal. They are provided for in paragraph 167 as articles or wares composed of metal and in paragraph 356 as parts of vanity cases. As the provision for parts of vanity cases composed of metal is less comprehensive than the provision for articles or wares composed of metal, it follows, on the record submitted to us, that the powder boxes, eyebrow-pencil cases, lip-stick cases, and powder-puff boxes which are suitable for vanity cases are more specifically provided for in paragraph 356, and are therefore dutiable at 60 per cent ad valorem, as found by the collector. The small mirrors are, it is true, suitable for use in fitting out vanity cases, but as they are to be numbered among the things which the vanity case is designed to hold, they can not be considered as parts of vanity cases, inasmuch as they do not serve in any way to make the vanity case serviceable as a container. As mirrors are provided for eo nomine under paragraph 95 they are dutiable under that provision.

Taking into account the presumption of correctness attaching to the finding of the collector, the evidence in the record, and the nature and character of the wares in controversy, we find—

First. That the metal pencil cases, metal-bound memorandum books with metal pencil holders attached thereto, belong to the class of articles which are carried by men on or about or attached to the

person, and that they are therefore dutiable at 60 per cent ad valorem, as assessed by the collector.

Second. That the metal handles, buttonhooks, tweezers, pin and needle boxes, pin or hairpin boxes, and perfume or smelling-salts flasks are not articles which are customarily or usually carried by men on or about or attached to the person, and that their shape, size, and construction are of a character which renders them unsuitable to be so carried by women as separate entities. They are, in our opinion, articles or wares composed of metal, and if plated with gold or silver should be assessed at 50 per cent ad valorem under the provisions of paragraph 167.

Third. The metal powder boxes, powder-puff boxes, eyebrow-pencil cases, and lip-stick boxes, are suitable containers for vanity articles and preparations, and giving proper weight to the finding of the collector they must be regarded as parts of vanity cases composed of metal. They are therefore dutiable at 60 per cent ad valorem as parts of vanity cases under the provisions of paragraph 356.

In the case of C. F. Rumpp & Sons *v.* United States, the decision of the Board of General Appraisers is reversed as to the metal handles, button-hooks, manicuring implements, tweezers, pin or hairpin boxes, and perfume or smelling-salts flasks, and such decision is affirmed as to the metal-bound memorandum books with pencils attached, the powder boxes, and the lip-stick boxes.

In the case of Langfeld Bros., the decision of the Board of General Appraisers is reversed as to the pin and needle cases, pin or hairpin boxes, perfume or smelling-salts flasks, and it is affirmed as to the metal-bound memorandum books with pencils and metal pencil holders attached, lip-stick boxes, lead-pencil cases, and eyebrow pencil cases.

In the case of Dingelstedt & Co. *v.* United States, the decision of the Board of General Appraisers is reversed as to the mirrors, pin or hairpin boxes, and the perfume or smelling-salts flasks, and it is affirmed as to the powder boxes and powder-puff boxes.

In the case of John Wanamaker *v.* United States, the decision of the Board of General Appraisers is reversed as to the pin or hairpin boxes and the metal perfume or smelling-salts flasks, and it is affirmed as to the enameled powder boxes.

*Modified.*

_____

CONCURRING OPINION.

BARBER, Judge, with whom MARTIN, Judge, agrees:

I concur in the conclusion reached by the court as to all these articles.

In my judgment, however, the metal powder boxes, powder-puff boxes, eyebrow pencil cases, and lip-stick boxes are no parts of

vanity cases, but are rather designed to be contents of such or other cases. I think, however, such articles are classifiable under paragraph 356, because (*a*) powder cases are *eo nomine* provided for therein, and (*b*) the eyebrow pencil cases and lip-stick cases are like articles to others *eo nomine* therein mentioned. All these articles serve the purpose of promoting the personal comfort and convenience of the carrier within the rule laid down by this court in Gallagher & Ascher *v.* United States (6 Ct. Cust. Appls., 105; T. D. 35343) and other cases recently decided.

The fact that, as the record here shows, they are imported to be put into ladies' hand bags or other leather bags or cases does not, in my judgment, militate against this conclusion, because when put into those receptacles they are, as the record in this case shows, carried on or about the person in pursuance of the purpose for which they were designed.

I am moved to make these suggestions in this manner because of the view I entertain that the term "vanity cases" as used in that paragraph relates to vanity cases composed wholly or in chief value of metal or of which metal is the predominant material, but that the term "parts of" as relating to such cases should not be extended to fittings therefor unless such fittings are designed to be immovably attached to the cases, as by soldering or other permanent method of attachment, which is not the case here.