UNITED STATES *v.* BONWIT, TELLER & CO. ET AL. (No. 3177)[1]

[1] T. D. 43429.

United States Court of Customs and Patent Appeals, June 11, 1929

*Charles D. Lawrence,* Assistant Attorney General (*Hugo P. Geisler,* special attorney, of counsel), for the United States.
*James W. Bevans,* for appellee.

[Oral argument May 15, 1929, by Mr. Lawrence and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and GARRETT, Associate Judges [1]

BLAND, Judge, delivered the opinion of the court:

Certain enameled silver powder boxes, circular in shape, about 3 inches in diameter and three-quarters of an inch thick, containing a mirror in the lid, valued above 20 cents per dozen, were assessed with duty at 80 per centum ad valorem under the provisions of paragraph 1428 for—

\* \* \* articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including \* \* \* powder cases, \* \* \* vanity cases, and like articles; all the foregoing \* \* \* composed of metal, whether or not enameled, washed, covered, or plated, \* \* \*.

The importer protested and claimed the goods dutiable at 50 per centum ad valorem under the provisions of paragraph 230 for—

\* \* \* all mirrors, not specially provided for, not exceeding in size one hundred and forty-four square inches, with or without frames or cases, \* \* \*.

The court below sustained the protest, from which action the Government has appealed to this court.

In the trial below three witnesses testified.

Robert William McConnochie, manager of the foreign business of appellee, testified that the articles were not designed to be worn on or about the person and that he based his opinion upon their construction in so far as they were designed to lie flat on the table, and stated that the top was round and the bottom was flat; that, being made of enamel, they could not be carried on or about the person because the enamel would readily break when it came in contact with keys or other hard substances in the pocket; that he had seen these articles used mainly on the dresser of a lady; that he did not sell this article; that he bought abroad; that they contained a mirror and a place for powder, both in solid and compact form; that the pad used was a small round chamois pad; that his company sells refills for the merchandise; that he had seen lots of the articles broken, only two of which were broken from being in a bag; that he had seen as many as

---

[1] LENROOT, Judge, did not participate in this decision, the case having been argued before he took his seat.

50 broken in the store and that his firm handled probably 100,000 vanities per year; that he had a large family, three boys and three girls, and he had seen this character of vanity repeatedly on his girls' dresser and on his wife's dresser; that he had also seen his wife's pocketbook on the dresser; that a vanity case was "a more complete affair for the toilet" than the merchandise at bar; that most of them contained lipsticks, perfumery, and other things.

Elenor V. Cramer, Government's witness, stated that she had been familiar with these articles ever since she used powder; that she had used a similar article which was probably not so elaborate; that it had an enamel surface and contained a mirror; that she used hers more out of her home than in her home and had seen other ladies use them away from home; that she had frequently seen them carried in hand bags and pocketbooks and carried hers that way; that hers was not flat on one side and not as large as the one at bar, but that it was heavy; that many girls she traveled with used enameled powder boxes similar to these with a mirror as large as this which had a flat bottom and oval top; that she didn't think it proper to put the person's name into the record. At this point a colloquy between Mr. Justice Brown and the witness took place as follows:

Justice Brown. The ones you have seen were not as expensive as that?

Witness. They were not as expensive as that. I don't know how much they are. I have seen them with that same kind of material.

Justice Brown. Do you know where you saw that one you just described and the person by whom carried?

Witness. I said I did not want to get the person's name in the minutes.

Justice Brown. We must naturally have the name, because counsel would be entitled to put that person on the stand. Unless you give the name, I will have to grant a motion to strike out your testimony.

Witness. I don't want to give anybody else's name.

Mr. Bevans. I move that the testimony of this witness be stricken out.

Justice Brown. All right; it will be stricken out.

To this ruling the Government duly excepted and made such action the basis of one of its assignments of error here.

Madeline Jaffe testified for the Government that she had been familiar with this kind of merchandise for about six years and that it was used by girls and women in women's dressing rooms and on trains, at theaters, and at dance parties; that she had seen them used in places other than in the home during her entire experience; that loose powder is preferred for the home and that a compact is more convenient; that if loose powder is used at places other than at home, it is held in the box by sifters; that some of the boxes she had seen were of the size of the exhibits before her; that all vanities or powder boxes that she had seen contained mirrors corresponding in all material respects to the ones at bar; that they had flat bottoms and were enameled; that she would call these articles vanities and that the vanities do not necessarily consist of more articles than are con-

tained in the exhibits at bar; that she had never seen this kind of box used on ladies' dressing tables.

An examination of the exhibits shows that the tops and the bottoms of the boxes are slightly convex, the convexity of the tops being more pronounced than that of the bottoms. It is suggested by the Government that the articles may have been made in this manner in order that the carrier might easily distinguish the top from the bottom, when it was necessary to open same.

The first division of the United States Customs Court, grounding its opinion chiefly on *Borgfeldt* v. *United States*, T. D. 42098, 51 Treas. Dec. 412, held that paragraph 230 specially provided for the merchandise at bar and that it was dutiable thereunder. In the course of the decision the court used the following language:

The mirrors in frames or cases may be carried on the person; they may be carried in a hand bag or in the pocket. Yet that would not cause these powder boxes, containing, as they do, a mirror, to fall within the provision of paragraph 1428 heretofore quoted. They may be intended to be carried on or about or attached to the person, but that general designation fails when confronted with the specific provision in paragraph 230 covering *all* mirrors with or without frames or cases.

We think the court below clearly erred in striking out the testimony of Elenor V. Cramer. Her refusal to give the name of the person whom she had seen carrying one of the boxes referred to would go to the weight of her testimony, and might be grounds for punitive action by the court, but we know of no law warranting the striking out of competent testimony already given, without objection, merely because a witness declined to divulge a name. This action on the part of the court, if the issue was not determinable without the stricken evidence, would be reversible error.

The court below, however, in its decision, did not find that the merchandise was not such as was designed to be worn on apparel or carried on or about or attached to the person, but, on the contrary, held, in effect, that even though provided for in paragraph 1428 it was more specifically provided for as mirrors in cases under paragraph 230.

The evidence is somewhat conflicting, but we think it supports rather than rebuts the finding of the collector that the articles were designed to be carried upon the person.

The importer takes the position that they are not provided for in paragraph 1428 and are provided for in paragraph 230. The Government contends that they are provided for in paragraph 1428 and are not provided for in paragraph 230, but states that if they are provided for in paragraph 230 they are more specifically and definitely provided for in paragraph 1428.

The importer here, and the court below in *Borgfeldt* v. *United States*, *supra*, followed by it in the case at bar, stressed the controlling effect

of *United States* v. *Metropolitan Aluminum Co.*, 3 Ct. Cust. Appls. 224, T. D. 32537. This case involved the dutiable classification, under the Tariff Act of 1909, of merchandise described in the opinion as follows:

1. A toilet case made of imitation leather and containing, inclusive, a mirror on one of the interior sides and a small celluloid comb on the other, the whole closing in the form of a book, and a size suitable for a vest pocket.

2. A similar article, except in the place of the comb there is substituted a memorandum tablet of small sheets of paper, and on the edge is a loop through which a small pencil is run, which accompanies the same as a part thereof.

3. Similar to the latter, except that it is smaller than the other.

We find in the decision the following language:

The crux of the case, therefore, is whether or not the presence of the comb and paper and pencil in the cases takes the articles beyond the category of "mirrors in cases" in paragraph 109.

We think that, as to the articles returned as manufactures of pyroxylin under the advisory classification of the appraiser indorsed upon the invoice, and which seem to be the sole goods and subject to the protest, the finding of the Board of General Appraisers that they were as so returned by the appraiser is supported by the evidence in the record. At least the record does not warrant any disturbance of that finding by the board under the rules of decision laid down by this court. *Likewise, the finding of the board that "the merchandise is mirrors in cases," which may be read as a finding as to the minor importance or relative insignificance of the combs or pencils or writing tablets, if they may be dignified by such designation, rests well within the record.* In that view we think the conclusion of the board correct. (Italics not quoted.)

We do not regard the last-cited case as controlling of the issues involved herein. The court there stated that "the finding of the board that 'the merchandise is mirrors in cases,' which may be read as a finding as to the minor importance of the combs or pencils or writing tablets, if they may be dignified by such designation, rests well within the record." The case is easily distinguishable from the case at bar in so far as the appellate court there declined to disturb a finding by the board to the effect that the articles attached to the mirror were so insignificant as to not take the importation out of the mirror-in-case category. It is also important to note that, as affects the issue here, the Tariff Act of 1909 contained no paragraph comparable with paragraph 1428 of the present act.

A very different situation prevails here. The mirror is a minor part of the beautiful and elaborate powder box to which it is fastened. Due, probably, to their beautiful workmanship and valuable material they sell at from $25 to $32. We do not think they are mirrors in frames or cases for the reason that they are more than mirrors in frames or cases. Congress, after using language so definite and specific in paragraph 1428, above quoted, could hardly have intended that articles like these, the mirrors of which are such insignificant components, should be classified as mirrors.

To permit the comparatively insignificant mirror to control the classification of these elaborate vanity cases or powder boxes would warrant a similar classification of elaborate purses, hand bags, and many other articles to which mirrors might be attached. That such was not within the legislative contemplation when the two paragraphs were framed seems too plain to warrant extended discussion.

In *Rumpp & Sons et al.* v. *United States*, 7 Ct. Cust. Appls. 203, T. D. 36507, leather bags, dressing cases, manicure cases, and other leather cases and boxes containing toilet articles were involved. This court there said:

It is true that ladies' leather hand bags fitted with articles of the kind now under discussion and ladies' vanity cases fitted with some of them are carried on or about or attached to the person. Such articles, however, when permanently fitted to ladies' hand bags or vanity cases, lose their identity as distinct entities and become as much parts in the tariff sense of the fitted hand bags or vanity cases as are the straps or chains by which the hand bags or vanity cases are carried. When carried or used in traveling as fittings of leather bags or vanity cases the conveniences are, therefore, carried on or about or attached to the person as constituents of the entirety of which they are a part and not as things having an individuality of their own. *Sussfeld, Lorsch & Co.* v. *United States*, 5 Ct. Cust. Appls. 382, 384; T. D. 34875.

The New Standard Dictionary defines "vanity box" as follows:

A small bejewelled or ornamented box for ladies, containing, usually, powder, a powder-puff, and a mirror.

It seems that the importation answers, in every detail, to the provisions of paragraph 1428 and is, therefore, dutiable thereunder.

It is not necessary for us to pass upon the relative specificity of the two paragraphs since the merchandise is not covered by paragraph 230.

At the trial below, importer abandoned protest 260671–G, and the court in its judgment overruled same but sustained the other protests in the case.

The judgment of the United States Customs Court is *modified.* Its action upon protest 260671–G is *affirmed* and in all other respects the judgment is *reversed.*