## UNITED STATES v. LEIGH.

(Circuit Court, D. Massachusetts. January 7, 1908.)

### No. 227 (1,920).

1. CUSTOMS DUTIES—CLASSIFICATION — ENTIRETY — CARD CLOTHING PACKED SEPARATELY FROM MACHINE.

In an importation of carding machines some of the clothing was packed separately; this clothing was so made as to fit the different parts of the machines, except that a certain amount of cutting, stretching, etc., would be necessary in the final adjustment; it would have been impracticable to import the machines with all the clothing attached, and it was customary to pack this part of the clothing separately. *Held*, that this clothing was not dutiable separately from the rest of the machines, but that the whole apparatus was dutiable as an entirety at the same rate.

**2. SAME—IMPORTATION IN SEPARATE PACKAGES.**

A machine may be dutiable as an entirety though imported in separate packages and requiring labor and adjustment to be assembled; but if, under the name of adjustment a considerable part of the manufacture of a machine takes place, so that the component parts when imported are related to the machine as a raw material, the raw material is dutiable accordingly.

**3. SAME—APPEAL FROM GENERAL APPRAISERS—WEIGHT GIVEN OPINIONS OF GENERAL APPRAISERS.**

The opinions of experts like General Appraisers, who are especially familiar with such controversies, should in close cases be given considerable weight by the courts in reviewing decisions of the Board of General Appraisers, upon controversies like that above stated.

On Application for Review of a Decision by the Board of United States General Appraisers.

For decision below, see G. A. 6,490 (T. D. 27,760), reversing the assessment of duty by the collector of customs at the port of Boston on importations by Evan Arthur Leigh.

W. K. Richardson (Asa P. French, U. S. Atty., on the brief), for the United States.

Everit Brown, for the importer.

LOWELL, Circuit Judge. This is an appeal from the decision of the Board of General Appraisers holding certain card clothing dutiable under paragraph 193 of the schedule rather than under paragraph 146. The paragraphs are as follows:

"146. Card-clothing manufactured from tempered steel wire, forty-five cents per square foot; all other, twenty cents per square foot." Act July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 162 [U. S. Comp. St. 1901, p. 1640].

"193. Articles or wares not specially provided for in this act composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum or other metal and whether partly or wholly manufactured, forty five per centum ad valorem."

For the history of these provisions, see Act March 3, 1883, c. 121, Schedule N, 22 Stat. 511, 501; Act Oct. 1, 1890, c. 1244, Schedule C, pars. 159, 215, 26 Stat. 578, 582; Act Aug. 27, 1894, c. 349, Schedule C, pars. 132, 177, 28 Stat. 518, 520; Act July 24, 1897, c. 11, § 1, Schedule C, 30 Stat. 162, 167 [U. S. Comp. St. 1901, pp. 1640, 1645].

The United States contends that the importation was dutiable as card clothing under paragraph 146; the importers contend that it was an integral part of the carding machines. These machines, as both parties agree, are dutiable under paragraph 193 as articles not specially provided for composed wholly or in part of iron or steel.

Leigh imported by the same steamer four carding machines made of metal and wood, and some card clothing. A part of the latter was intended for the cylinders and doffers of the four machines, and a part for uses unconnected with these machines. Separated parts of the machines, other than the importation in question, were imported in separate packages. Each entire machine (except the card clothing here in question) had been assembled in England before shipping. With the exception of the card clothing the machines were made by the same manufacturer. The clothing was made by another concern; a part of

it was cut in Europe, and was there attached to the rollers or flats of the carding machines, and was imported in this condition. As both parties admit, this part of the clothing of the machines was dutiable as part of the machine itself under paragraph 193. The clothing here in question, intended for use on the cylinders and doffers of the same machines, was made in strips having the same width throughout; the strips were made long enough to cover the cylinders and doffers respectively. The strips were packed in tin boxes, each of which held clothing sufficient for the cylinders and doffers of several machines. The importer's order for the whole machine, and for all its card clothing, was given at the same time. Sometimes he ordered the card clothing directly from its manufacturer, and sometimes through the manufacturer of the machine. The clothing used on the cylinder was not precisely like that used on the doffer. In order to make either the card clothing or the carding machines available for use in manufacture, the clothing for the cylinders and doffers must be unrolled from the boxes which hold it; it must be stretched and wound spirally upon the cylinders and doffers, and must be attached thereto. In order to fit the clothing accurately to a cylinder or doffer, so that the spiral winding shall cover every part of its surface and no more, the clothing must be cut, though the waste is small. The government admits that, if the clothing here in question had been attached to the cylinders and doffers before importation, and had been imported thus attached, such clothing would be dutiable under paragraph 193, according to the contention of the importer. This arrangement would tend to injure the clothing by the pressure and jarring of the heavy cylinder during transportation. Carding machines and their clothing are commonly shipped from place to place in this country in separate packages, substantially as in this importation. On the other hand, the importer concedes that card clothing imported like that here in question, unaccompanied by the machines on which it is to be placed, is dutiable under paragraph 146, as contended by the government.

In support of its contention, the United States urges: (1) That the clothing was not made by the manufacturer of the rest of the machine. But all the clothing was the product of the same manufacturer, and there is no dispute that the part of it which was attached in Europe to the rollers and flats is dutiable as part of the machine. (2) That the clothing was imported in a separate package. This is true of the parts of the machine generally. Yet these parts, though separated in importation, are admitted to be dutiable as parts of a complete machine. (3) That the card clothing might have been used upon another machine rather than upon that imported with it. But this argument applies to the nuts and bolts and some of the simpler parts of a machine which is dutiable as an entity. (4) That card clothing like this importation is kept in stock by this importer, and is sold by him without reference to the importation of any machine. The argument has weight, but is not conclusive. (5) That a decision against the United States would open the door to fraud, although fraud is not suggested in the case at bar. But the argument works both ways. If the rate of duty on a completed machine is higher than that upon card clothing, as appears

sometimes to be the case, the United States would be the gainer by the opinion from which it has here appealed. (6) That a considerable amount of adjustment, including a cutting of the fabric, must be accomplished in this country before the card clothing is attached to the cylinder and doffer fit for use. The question is one of degree, and here it is a close one. A machine which is dutiable as a whole may yet be imported in separate packages. To assemble the machine after importation requires some labor and adjustment. If the adjustment is small, the need of it does not make the several parts of the machine dutiable separately rather than as integral parts of a finished machine. But if, under the name of adjustment, a considerable part of the manufacture of the machine takes place in this country, so that the component parts, when imported, are related to the completed machine as raw material, that raw material is dutiable accordingly.

The Circuit Court sits to review the decisions of the Board of General Appraisers. It is vested with authority to reverse the decision of the board if, in the opinion of the court, the board has erred in law or in fact. Where the case is a close one, and the decision of it depends upon the difference between the adjustment of a machine already finished and the last stages in the manufacture of the same machine, considerable weight should be attached by this court to the opinion of experts like the General Appraisers, who are especially familiar with this kind of controversy. Upon the whole, I am not disposed to overrule the board by holding that the card clothing imported after attachment to the flats and rollers of a carding machine is part of a machine finished abroad, while the card clothing imported in lengths cut to suit the cylinders and doffers of the same machine, but unattached thereto, forms no part of the machine, but is dutiable as an independent article.

The decision of the Board of United States General Appraisers is affirmed.